IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ASHLEY GRIMMETT and JEREMY GRIMMETT, individually and a/n/f of J.G., an incapacitated minor,<br><br>    Plaintiffs,<br><br>v.<br><br>DESOTO INDEPENDENT SCHOOL DISTRICT, KEISHA COLEMAN, JACKIE BRIGGS, MIA STORY, KIMBERLY DUNCAN, HEATHER TIBBS, TIFFANY DANIELS, KAREN MORELAND, CHARLOTTE STEENSON, KIMBERLY THOMPSON,<br><br>    Defendants. | Civil Action No. 3:22-cv-00876-N |

**PLAINTIFFS' BRIEF IN SUPPORT OF RESPONSE TO DESOTO INDEPENDENT SCHOOL DISTRICT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs Ashley Grimmett and Jeremy Grimmett, individually and a/n/f of J.G., their incapacitated minor son (collectively "Plaintiffs"), file this Brief in Support of their Response to DeSoto Independent School District's ("DISD") Motion to Dismiss Plaintiffs' First Amended Complaint, showing the Court that this lawsuit is not subject to dismissal pursuant to FED. R. CIV. P. 12(b)(1), (6), as follows:

## I.    INTRODUCTION

The crux of this lawsuit centers on verbal and physical abuse and unwarranted physical restraint of a four-year-old, disabled, African American early education student, attending Amber Terrace Elementary School within DISD. Multiple instances of abuse were committed by a teacher's aide and an occupational therapist employed by DISD. DISD and its personnel and staff

determined that Plaintiff J.G. ("J.G.") was disabled and considered him disabled at all material times relevant to this lawsuit. Indeed, J.G. was non-verbal and required reasonable accommodations for, *inter alia*, communication, learning, discipline, and instruction. Multiple instances of abuse were captured on videotape by DISD; however, despite knowing of the abuse, DISD failed to act in deliberate indifference to the statutory and constitutional rights of Plaintiff J.G. ("J.G."), and DISD maintained customs to ignore employee misconduct to disabled and/or African American students, customs to purposefully ignore and cover-up abuse of said students like J.G., and DISD failed to adequately train and/or supervise its teachers and staff with regard to physical and verbal abuse of students, all of which constituted deliberate indifference to the rights of J.G. This lawsuit certainly passes muster to surpass dismissal under FED. R. CIV. P. 12(b)(1), (6), and Defendant's Motion must be denied.

## II.    ARGUMENTS AND AUTHORITIES

At the outset, Plaintiffs hereby incorporate as if reprinted herein, their arguments and authorities contained in their Brief in Support of Response to DeSoto Independent School District's Motion to Dismiss Plaintiffs' Verified Complaint for Damages filed in this cause on May 22, 2022. Dkt. 7, § II.

### A.    PLAINTIFFS WERE NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES

DISD asserts that Plaintiffs claims under Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983, must be dismissed for failing to exhaust administrative remedies required by the Individuals with Disabilities Education Act ("IDEA"), purportedly rendering this Court without jurisdiction to decide this case. Dkt. 9, §§ II.B-D. The gravamen of Plaintiffs' lawsuit derives from the verbal and physical abused suffered by J.G. Dkt. 5, ¶¶12-29. Plaintiffs alleged no claims under the IDEA, the IDEA is not implicated

by the crux of this lawsuit, and Plaintiffs had no exhaustion requirement to satisfy. Indeed, according to the Supreme Court, Plaintiffs not initially seeking administrative review of this lawsuit only undergirds their position. *Doe v. Dallas Ind. Sch. Dist.*, 941 F.3d 224, 228 (5th Cir. 2019) ("[C]ourts may look to the 'history of the proceedings' to determine the gravamen of the complaint.").

> The IDEA includes the following exhaustion requirement provision:
>
> *Nothing* in this chapter *shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [("ADA")], title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities*, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l) (emphasis added). Plaintiffs have sought no remedies available under the IDEA, the gravamen of Plaintiffs' pleading is not seeking damages for denial of a FAPE, and there is no applicable exhaustion requirement in this case. Dkt. 5, ¶¶27-28, 30-43.

Pursuant to the Supreme Court's seminal case, *Fry v. Napolean Cmty. Sch.*, the IDEA is only implicated, and an exhaustion requirement triggered, if the crux or gravamen of the claims seek relief for the "denial of the IDEA's core guarantee [of] . . . a free and appropriate education" or "FAPE." 137 S. Ct. at 749. To determine whether a plaintiff seeks relief for the denial of a FAPE, the *Fry* court anticipated asking two questions: 1) could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school; and 2) could an adult at the school have raised essentially the same grievance? *Id.*, at 755. If the answer is "yes," a complaint is *unlikely* to truly be about a FAPE, and exhaustion is not required. *Id*. If the answer is "no," then the complaint probably does concern a FAPE, regardless whether it is expressed under that theory or not. *Id*. In this case, the answer is a resounding "yes",

as courts routinely find that abuse cases allege a general-purpose barrier to the benefits of education, not just the custom-designed IEP that the IDEA provides – the allegations are about verbal and physical abuse and discrimination, not special education opportunities. *See, e.g., Doe v. Dallas Ind. Sch. Dist.*, 941 F.3d 224, 227-29 (5th Cir. 2019); *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City and Cty. of Denver, Colo.*, 233 F.3d 1268, 1274–75 (10th Cir. 2000); *Witte by Witte v. Clark County Sch. Dist.,* 197 F.3d 1271 (9th Cir. 1999), *overruled in part on unrelated grounds at Payne v. Peninsula Sch. Dist.*, 653 F.3d 863 (9th Cir. 2011) (holding that the IDEA's exhaustion requirement is not jurisdictional).

Plaintiffs allege that J.G. was verbally and physically abused and restrained by his DISD aide and staff. Dkt. 5, ¶¶12, 21, 23-24, 50. These injuries are non-educational in nature and cannot be remedied through the administrative process under the IDEA. *F. H. v. Memphis City Sch.*, 764 F.3d 638, 644 (6th Cir. 2014). Requiring exhaustion of Plaintiffs' 42 U.S.C. § 1983 claims would also create an additional administrative barrier not present for non-disabled children. *Id. (citing Sagan v. Sumner Cnty. Bd. of Educ.*, 726 F. Supp. 2d 868, 882-83 (M.D. Tenn. 2010) ("The Court construes these claims as arising from non-educational injuries, irrespective of the fact they occurred in an educational setting and were allegedly perpetrated by educators against a student. If Jane Doe were not a disabled student, there would be no administrative barrier to her pursuit of these claims.")). J.G. does not contend he failed to receive a FAPE, but rather that he was physically and mentally abused.

While DISD relies exclusively on *Heston v. Austin Indep. Sch. Dist.*, 816 Fed. Appx. 977 (5th Cir. 2020), claiming that the gravamen of Plaintiffs' Complaint turns on a failure to train and supervise educational staff as to J.G.'s IEP. Dkt. 9, at 9-10. DISD has cherrypicked language from Plaintiffs' Complaint to shoehorn the allegations therein to fit their argument. Plaintiffs were

required to factually explain J.G.'s disability and related accommodations for their disability discrimination claims. *See, e.g., Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004) (explaining elements for violation of Title II of the ADA). All of Plaintiffs' claims are undergirded by DISD engaging in purposeful and intentional abuse -- the lack of a FAPE did not abuse J.G., nor is there any allegation that appropriate training or abiding by J.G.'s IEP would have prevented intentional abuse based on discriminatory animus. Dkt. 5, ¶¶24-26, 34, 42, 46, 51. *See, e.g., Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 785 (10th Cir. 2013) ("Even though random violence may occur in the course of a child's education, we do not believe the child's parent must request a "no random violence" clause in the IEP."). DISD has engaged in an artful attempt to make this case something that it is not – this is an abuse and discrimination case. Because Plaintiffs were not required to exhaust administrative remedies under the IDEA prior to filing this lawsuit, DISD's Motion in this regard must be denied. As such, Plaintiffs' ADA and section 1983 claims survive dismissal on these grounds. Should the Court find otherwise, Plaintiffs seek leave to once again amend their pleading to clarify their basis for the claims alleged.

B.  **PLAINTIFFS PLED SUFFICIENT FACTS TO SHOW MUNICIPAL LIABILITY**

   1) **Plaintiffs Integrate the DISD Board of Trustees Throughout Their Entire Pleading**

DISD attempts to claim that Plaintiffs' Complaint must be dismissed based on the following sentence meant to fully integrate Plaintiffs' pleading as to DISD's decision and policy makers: "DISD, as used herein, includes the district's Board of Trustees and requisite policy makers for the district." DISD admits that the Board of Trustees is the policy-making body, and Plaintiff's pleading clearly recognizes that and ensures the Board is included in all references to DISD. The Argument that this somehow negates Plaintiffs' pleading is without merit.

### 2) PLAINTIFFS ADEQUATELY PLEAD MUNICIPAL CUSTOMS AND/OR POLICIES TO SUPPORT LIABILITY

DISD's contention that Plaintiffs' Amended Complaint is devoid of sufficient factual allegations supporting municipal liability supplants this Court's standards of review for a Motion to Dismiss on the pleadings. Plaintiffs must only plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs do not need to assert detailed factual allegations, as DISD contends. *Twombly*, 550 U.S. at 555. Plaintiffs must only provide sufficient underlying facts showing an entitlement to relief and not simply a "formulaic recitation of the *elements of a cause of action*[.]" *Id*. (emphasis added). The factual allegations must be enough "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *In re Katrina Canal*, 495 F.3d at 205 (*quoting Twombly*, 550 U.S. at 555). Plaintiffs must, therefore, plead "factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). Drawing on its judicial experience and common sense, the Court shall undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against the defendant "across the line from conceivable to plausible." *See id*. at 679, 683.

Herein, Plaintiffs alleged the following customs implemented by DISD that were the moving forces behind the violations of J.G.'s constitutional rights: 1) DISD did not frequently evaluate video recordings of J.G.'s classroom that would have signaled the ongoing abuse, in conjunction with a failure to train and supervise staff with regard thereto; 2) DISD failed to adequately train and/or supervise its teachers and staff with regard to physical and verbal abuse towards disabled students, including the reporting of such abuse; and 3) DISD has a custom not to

monitor the use of physical restraints for non-emergency circumstances and does not adequately train or supervise its staff regarding the proper use of restraints. Dkt. 5, ¶¶17-26. The customs outlined in Plaintiffs' pleading more that suffices to avoid dismissal on the pleadings. *See, also*, Dkt. 7, § II.E.

Concerning DISD's failure to "routinely," or frequently, review the special education video recordings, the term "routinely" was chosen from DISD's own policies. *Id*., ¶¶17-19. In contrast, the undefined statutory term "regular" is defined as recurring at a fixed, uniform, or normal interval. *See Regular*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/regular. The clear legislative purpose of TEX. EDUC. CODE § 29.022(h) is not to preclude video from being reviewed often but is to avoid a known pattern of review, as the purpose of the recordings are to ensure the safety of students. *Id*., § 29.022(a) (explaining the purpose is to "promote student safety."). DISD appears to claim that it has no duty to review the video footage, which undergirds Plaintiffs' claims and violates the statute under which it claims protection. *See, generally*, § 29.022. It's argument in this regard must be ignored.

DISD then argues that Plaintiffs have failed to substantiate their pleading with enough facts to support deliberate indifference under a failure to train theory. DISD's arguments simply urge the legal requirements that Plaintiffs must prove at trial, following discovery conducted by the parties, ignoring the actual allegations in the complaint. Dkt. 9, at 15-16. Plaintiffs spend considerable time explaining the lack of training and supervision supporting their constitutional claims. Dkt. 5, ¶¶14-22, 25-26, 31-38. Plaintiffs Amended Complaint further establishes a pattern of ongoing unconstitutional behavior. *Id*., ¶¶13, 21, 23, 51. DISD failed to train and/or supervise its teachers, administrators, and staff to monitor the surveillance video of special education classrooms. *Id*., ¶¶19-20. DISD employees were also not trained or disciplined for purposes of

equipping them with alternatives to avoid abusive conduct towards disabled students, especially with regard to non-verbal students who have difficulty communicating and understanding instructions. *Id.*, ¶20. DISD's custom in not monitoring the use of restraints for non-emergency circumstances or with regard to disabled students, as well as not adequately training or supervising its teachers and staff with regard to proper use of restraints on disabled students was a moving factor of the continued abuse against J.G. *Id.*, ¶22. Moreover, all defendants are mandatory reporters of child abuse, yet none of them reported the *ongoing* conduct, and DISD failed to adequately train its employees to report abuse. Assuming the foregoing is true, which the Court is required to do, Plaintiffs have sufficiently pleaded claims for constitutional violations under 42 U.S.C. § 1983 to avoid dismissal on the pleadings.

C.  **PLAINTIFFS ADEQUATELY PLEAD RACE-BASED DISCRIMINATION**

In addition to the disability discrimination and harassment suffered by J.G., Plaintiffs also fully integrate their race discrimination claims by pleading that, "[a]lternatively, the abuse was suffered by J.G. because he is African American and the customs attributable to causing disability discrimination against J.G. are alternatively alleged by Plaintiffs to cause race-based discrimination and harassment." Dkt. 5, ¶24. *See, also, id*, at ¶¶10, 25, 28, 33-48. Thus, there are a litany of facts supporting disability discrimination of which DISD does not contend is insufficient for that claim that, alternatively, support Plaintiffs' Title VI claims. *Id.*, at ¶¶10-26, 33-48. Notably, DISD argues within the context of Title IX, and Plaintiffs have alleged no claims under Title IX. Dkt. 9, at 17-18. And, while DISD asserts that Plaintiffs did not plead "actual knowledge", Plaintiffs did iterate the individual defendants had "knowledge" which is clearly sufficient for pleading purposes. Dkt. 9, at 17; Dkt. 5, ¶¶ 14, 16, 24-25, 45-48; Dkt. 7, § II.F. Accordingly, Plaintiffs have adequately plead a claim for race discrimination and harassment.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs ask that this Court deny DISD's current Motion to Dismiss, as Plaintiffs satisfy the pleading requirements under FED. R. CIV. P. 12(b)(6) and this Court has jurisdiction over these claims under FED. R. CIV. P. 12(b)(1). Alternatively, Plaintiffs seek leave from the Court to replead this lawsuit concerning any deficiencies found in their First Amended Complaint, as this lawsuit hinges on physical and mental abuse. Plaintiffs seek any further or additional relief this Court deems warranted.

Respectfully submitted,

*/s/ Nuru L. Witherspoon*
Nuru L. Witherspoon
Texas State Bar No. 24039244
witherspoon@twlglawyers.com
**THE WITHERSPOON LAW GROUP**
5565 Deer Creek, Unit A
Dallas, Texas 75228
866.491.2130 - Telephone
972.696.9982 - Facsimile


**Verona Swanigan, Esq.**
SBN: 1086459
callthelawlady@outlook.com
**THE SWANIGAN FIRM**
425 West Capitol Ave., Suite 1533
Little Rock, AR 72201
Telephone: (866) 603-5239
Facsimile: (866) 603-5239

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

   I do hereby certify that on June 27, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to the e-mail addresses on the electronic mail notice list, and a copy was sent, via electronic mail, to:

Meredith Prykryl Walker
WALSH GALLEGOS TREVINO
KYLE & ROBINSON, P.C.
105 Decker Court, Suite 700
Irving, Texas 75062
mwalker@wabsa.com.

                  */s/ Nuru L. Witherspoon*
                  Nuru L. Witherspoon