IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ASHLEY GRIMMETT, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-CV-876-N |
| | § | |
| KEISHA COLEMAN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Desoto Independent School District's ("DISD") motion to dismiss or strike Plaintiffs' amended complaint [22].[1]  Because Plaintiffs have adequately pled their claims under Rule 12(b)(6), the Court denies the motion.

### I. ORIGINS OF THE MOTION

This case arises from the alleged abuse of a four-year-old child while at school. Plaintiffs Ashley and Jeremy Grimmett enrolled their son, J.G., an incapacitated minor, in Amber Terrace Elementary School within DISD.  Second Am. Compl. ("2AC") ¶¶ 16–17 [21].  J.G. has been diagnosed with Trisomy 2 Chromosome Disorder and Autism.  *Id.* ¶ 17.  As a result, he suffers from severely impaired verbal and motor skills.  *Id.*  In 2019, DISD classified J.G. as a disabled student requiring accommodations.  *Id.* ¶ 18.

In February 2020, the Grimmetts discovered that J.G. had been abused by a teacher's aide employed by DISD.  *Id.* ¶¶ 19–23.  They contacted both campus and district

---

[1] The motion and this Order address only Plaintiffs' claims against DISD.

MEMORANDUM OPINION AND ORDER – PAGE 1

officials to investigate what happened to their child but were not satisfied with the response. *Id*. ¶¶ 24–26. The Grimmetts filed suit against DISD and several codefendants asserting claims under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and Title VI of the Civil Rights Act of 1964. *Id*. ¶¶ 2–4. The Grimmetts allege that DISD maintained customs and policies of failure to train and supervise, failure to monitor video surveillance, and failure to monitor the use of restraints in nonemergency circumstances that resulted in the violation of J.G.'s rights. *Id*. ¶¶ 27–35. DISD now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD UNDER RULE 12(B)(6)

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than

MEMORANDUM OPINION AND ORDER – PAGE 2

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### III. THE COURT DENIES THE MOTION TO STRIKE

DISD argues that the Court should strike the 2AC because the Grimmetts filed it one day late. In a prior Memorandum Opinion and Order granting DISD's motion to dismiss [18], the Court granted the Grimmetts leave to amend within 30 days. The Court signed the Order on November 28, 2022, but the Clerk's Office did not enter the Order into the docket until November 29, 2022. The Grimmetts filed the 2AC on December 29, 2022. Because the Grimmetts did not receive notice of the order through ECF until November 29, 2022, and thereafter filed the 2AC within 30 days of receiving notice, the Court declines to strike the 2AC as untimely.

### IV. THE COURT DENIES THE MOTION TO DISMISS

#### A. The Grimmetts Have Adequately Pled Their Section 1983 Claims

***1. Legal Standards for Section 1983 Claims Against Municipalities.*** – Section 1983 does not permit vicarious liability for municipalities. A "municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978) (emphasis in original). Municipality or corporate

MEMORANDUM OPINION AND ORDER – PAGE 3

liability under section 1983 requires proof of three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). If plaintiffs do not sufficiently plead all three elements, they run the risk of collapsing their claim into one of respondeat superior liability. *Id.* at 580.

There are two ways of defining an "official custom or policy" for the purposes of *Monell* liability:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)). In Texas, the final policymaker for a school district is the Board of Trustees. TEX. EDUC. CODE § 11.051; *Mohamed v. Irving Indep. Sch. Dist.*, 252 F. Supp. 3d 602, 613 n.6 (N.D. Tex. 2017) (citing *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993)). The Grimmetts point to policies promulgated by the DISD Board of Trustees and customs which the DISD Board of Trustees had actual or constructive knowledge as the moving force behind the employees' abuse of J.G.

*2. **The Grimmetts Have Adequately Pled a Custom or Policy.*** – First, the Grimmetts allege the existence of a DISD policy not to monitor video surveillance to prevent or punish staff misconduct. The Grimmetts may demonstrate an official policy by alleging a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by" the Board of Trustees. *Johnson*, 958 F.2d at 94; *Mohamed*, 252 F. Supp. 3d at 613 n.6. In its Student Code of Conduct,[2] DISD states that video recordings will be monitored routinely. Pls.' App. 2 [26]. DISD argues that because the district's video monitoring policy is mandated by state law, it cannot be considered a municipal policy or custom for *Monell* liability. Defs.' Br. Supp. Mot. Dismiss 12 [23]. Regardless, at this stage of litigation, it is unclear whether DISD's policy actually mirrors Texas law. *See* Pls.' Resp. Br. 6–8 [25] (pointing out allegedly substantive differences in the text and meaning of state law from DISD policy). Accordingly, the Court declines to dismiss the Grimmetts' claims regarding DISD's failure to monitor video surveillance.

Next, the Grimmetts point to DISD's alleged custom of not monitoring the use of restraints on disabled students in nonemergency circumstances. 2AC ¶ 35. DISD has not addressed the viability of this claim in its motion to dismiss or reply brief, and accordingly the Court treats any argument as waived.

---

[2] DISD argues that the Grimmetts cannot rely on the Student Code of Conduct to establish the official policy of DISD as the document states that some of the district policies and guidelines have been paraphrased. But a motion to dismiss is not the forum to dispute the factual contours of the underlying official policy, and accordingly, whether the Student Code of Conduct accurately reflects the official policies of DISD is a question best reserved for another day.

MEMORANDUM OPINION AND ORDER – PAGE 5

Lastly, the Grimmetts allege that there are customs of failing to train or supervise district employees to avoid abusing disabled students and ignoring abuse against disabled students. The complaint describes a culture of corporal punishment and specific instances of abuse against disabled students over the past few years. 2AC ¶¶ 47–56. Furthermore, the complaint alleges that DISD had actual knowledge of these customs through parental complaints, surveillance footage, and lawsuits. *Id.* ¶ 72. Accordingly, the Grimmetts have adequately pled a persistent widespread practice that is so common and well settled as to constitute a custom that fairly represents DISD's policy.

### B. The Grimmetts Have Sufficiently Alleged Violations of the ADA

A prima facie case of discrimination under the ADA requires that a plaintiff demonstrate "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Estate of A.R. v. Muzyka*, 543 F. App'x. 363, 365 (5th Cir. 2013) (unpub.) (quoting *Melton v. Dallas Area Rapid Transit,* 391 F.3d 669, 671–72 (5th Cir. 2004)). The Fifth Circuit has equated liability standards under Section 504 and the ADA. *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) (citing *Hainze v. Richards,* 207 F.3d 795, 799 (5th Cir. 2000)).

The parties do not dispute that J.G. is a qualified individual under the ADA. The Grimmetts argue that the policies and customs maintained by DISD lead to disability

MEMORANDUM OPINION AND ORDER – PAGE 6

discrimination. As discussed in Section III(B)(1), the Grimmetts have identified the policies that the Board of Trustees allegedly promulgated, pointed to specific instances where DISD officials gained knowledge of inappropriate staff behavior, and pled the actual knowledge of the Board of Trustees as to various customs. Allegedly, DISD denied the benefits of its educational system to J.G. by maintaining policies and customs that resulted in the physical and verbal abuse of disabled students. Contrary to DISD's characterization, the complaint's allegations demonstrate that violations of the ADA were not isolated and occurred at every level of DISD. *See, e.g.*, 2AC ¶¶ 20–21, 24–26, 33–34, 42–43, 49–56, 83. Moreover, the complaint alleges facts indicating that the denial of benefits tied directly to J.G.'s disability, as nondisabled students were not subject to the same physical and verbal discipline. *See, e.g., id.* ¶¶ 47, 83, 85, 87. Accordingly, the Grimmetts have pled facts sufficient to maintain their claim of disability discrimination.

### C. The Grimmetts Have Sufficiently Alleged Violations of Title VI

Section 601 of Title VI of the Civil Rights Act of 1964 "prohibits only intentional discrimination." *Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x. 233, 236 (5th Cir. 2020) (unpub.) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001)). The complaint incorporates the allegations related to disability discrimination into the Title VI claim. *See* 2AC ¶ 91. The Grimmetts identified the policies that the Board of Trustees allegedly promulgated, pointed to specific instances where DISD officials gained knowledge of inappropriate staff behavior, and pled the actual knowledge of the Board of Trustees as to various customs as discussed in Section III(B)(1). The complaint alleges that teachers and staff physically and verbally abused J.G. due to his race and did not use similar disciplinary

MEMORANDUM OPINION AND ORDER – PAGE 7

methods on students who were not African-American. *See, e.g.*, 2AC ¶ 20–21 24–26, 36–37, 43, 93. Furthermore, the Grimmetts have pled facts showing that DISD and supervisory employees had actual notice of the conduct of the offending employees and refused to investigate or otherwise respond to the race-based harassment. *See, e.g.*, 2AC ¶¶ 30, 43, 64, 99–100; *see Bhombal*, 809 F. App'x. at 237 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)) (explaining that a Title VI claim may be proven if "an 'appropriate person' in the district—i.e., someone who could take corrective measures—had 'actual knowledge' of intentional discrimination yet responded with 'deliberate indifference'"). Accordingly, the allegations are sufficient to support the Grimmetts' Title VI claims.

## CONCLUSION

Because the Grimmetts have sufficiently stated a claim against DISD upon which relief can be granted, the Court denies the motion to dismiss. This Order does not affect the Grimmetts' claims against the individual defendants.

Signed April 3, 2023.

_____
David C. Godbey
Chief United States District Judge